UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHARLEEN M. SANCHEZ,

                         Plaintiff,                06-CV-0088-A(F)

           v.                              **DECISION**
                                             **and ORDER**

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security

                         Defendant.

_____

## INTRODUCTION

Plaintiff Charleen M. Sanchez ("Plaintiff") brings this action pursuant to the Social Security Act ("The Act") § 216(I) and § 223, seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits.[2] Specifically, Plaintiff alleges that the decision of Administrative Law Judge ("ALJ")William J. Reddy denying her application for benefits was not supported by substantial evidence contained in the record and was contrary to applicable legal standards.

Plaintiff moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)("Rule 12(c)"), seeking reversal of the

_____

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for his predecessor Commissioner JoAnne B. Barnhart as the proper defendant in this suit.

[2] This case was transferred to the undersigned by the Honorable Richard Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated January 11, 2008.

Commissioner's ruling or, in the alternative, remand of the matter for a new hearing. The Commissioner cross-moves for judgment on the pleadings pursuant to Rule 12(c), on the grounds that ALJ Reddy's decision was supported by substantial evidence contained in the record and was based on the correct application of appropriate legal standards. For the reasons set forth below, I find that the decision of the Commissioner is supported by substantial evidence, and is in accordance with applicable law. I therefore grant the Commissioner's motion for judgment on the pleadings, and deny Plaintiff's motion for judgment on the pleadings.

## BACKGROUND

On July 30, 2004, Plaintiff, who was then 49 years old, filed an application for Disability Insurance Benefits (Tr. at 72-75). Plaintiff claimed an inability to work between April 20, 2001 and September 30, 2002 (her last date of insured status under The Act), due to headaches, depression, memory impairment neck and back disorders and hepatitis "C" with cirrhosis (Tr. at 11). The ALJ determined that the Plaintiff's earnings record reveals that she only has sufficient quarters of coverage to remain insured through September 30, 2002 (Tr. at 11). Plaintiff's application was denied initially on February 23, 2004 (Tr. at 59-62), and she then filed a timely request for a hearing before an ALJ (Tr. at 63). Plaintiff appeared, with counsel (Joseph Clark, attorney for

claimant), in an administrative hearing before ALJ William J. Reddy on August 19, 2005 in Rochester, NY (Tr. at 23-55).

In a decision dated September 22, 2005, ALJ Reddy found that although Plaintiff's hepatitis "C" with cirrhosis and back and neck impairments were severe, the Plaintiff was not disabled within the meaning of the Social Security Act ("the Act")(Tr. at 11-21). Plaintiff appealed that decision to the Social Security Appeals Council ("Appeals Council") on November 17, 2005 (Tr. at 7).

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review of the ALJ's decision on January 21, 2006 (Tr. at 4-6). On February 10, 2006, Plaintiff filed this action.

## DISCUSSION

### I.   Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits

the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II. __The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.__

As an initial matter, ALJ Reddy had to establish that the Plaintiff did indeed meet the requirements of insured status under The Act.  As the ALJ properly determined, the Plaintiff's earnings

record reveals that she had only acquired sufficient quarters of coverage to remain insured through September 30, 2002 (Tr. at 11, 57, 58, 96). Therefore, the Plaintiff was required to demonstrate that she was disabled within the meaning of The Act on and before the date that her insured status expired. The ALJ's analysis in this regard was proper.

In finding that Plaintiff was not disabled within the meaning of the Social Security Act during the period in dispute, the ALJ adhered to the Social Security Administration's five-step sequential evaluation analysis for evaluating applications for disability benefits. See 20 C.F.R. § 404.1520.[3] Under step one of that process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of April 20, 2001 (Tr. at 11).

At steps two and three of the analysis, the ALJ found that Plaintiff had hepatitis "C" with cirrhosis and back and neck impairments (Tr. at 12-14). He found these impairments to be severe within the meaning of the Regulations, but not severe enough to meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Regulations No.

---

[3] Pursuant to the five-step analysis set forth in the regulations, the ALJ, when necessary will: (1) consider whether the claimant is currently engaged in substantial gainful activity; (2) consider whether the claimant has any severe impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities; (3) determine, based solely on medical evidence, whether the claimant has any impairment or impairments listed in Appendix 1 of the Social Security Regulations; (4) determine whether or not the claimant maintains the residual functional capacity to perform his past work; and (5) determine whether the claimant can perform other work. See id.

4., Listings 1.04 (Spinal Disorders) or Listings 5.05 (Chronic Liver Disease) (Tr. at 13).

At steps four and five of the five-step evaluation process, the ALJ concluded that prior to August 20, 2002, the Plaintiff retained the residual functional capacity to perform a full range of work at the sedentary exertional level (Tr. at 14-20).[4]  Based on this analysis of the Plaintiff's condition, the ALJ determined that Plaintiff was unable to return to her past relevant work as a hand packer (Tr. at 19).  The ALJ then turned to step five and the question of whether there was any other work in the national economy that the claimant could perform (Tr. at 19).  The ALJ found that the plaintiff could fulfill the exertional requirements of a full range of sedentary work (Tr. at 18).

The ALJ's decision under step five was based on direct application of Medical-Vocational Rules in accordance with the directives of SSR 83-11.  In short, SSR 83-11 provides that if a plaintiff meets all (or substantially all) the exertional demands of a particular exertional level, then the ALJ may base his disability decision on the vocational profile of the plaintiff under the Medical-Vocational Rules.  The ALJ then found that based on the claimant's specific vocational profile and exertional

---

[4]Sedentary Work involves lifting no more than ten pounds and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a).

limitations under direct application of Medical-Vocational Rule 201.21, the claimant was not disabled.

The plaintiff contends that the medical evidence in the record supports a finding of disability for the period from April 20, 2001 through September 30, 2002. The Plaintiff claims that her impairments were of such severity that she was unable to perform any work that exists in the national economy. However, the ALJ found that, while limited, the Plaintiff's residual functional capacity was sufficient to allow her to perform a full range of sedentary work. The ALJ's conclusion that the Plaintiff retained a functional capacity inconsistent with a finding of disability is based on substantial evidence in the record.

A plaintiff claiming disability has "a continuing burden of showing, by means of 'medically acceptable clinical and laboratory diagnostic techniques'" that her physical and mental impairments are of such severity that she is unable to perform *any* substantial gainful activity. Matthews v. Eldridge, 424 U.S. 319, 336 (1976). It is not enough for a plaintiff to show that she is unable to perform work she has done in the past, but she must also show that she is unable to perform "any other kind of substantial gainful work which exists in the national economy." Id. In this case, the Plaintiff did not meet this burden. Based on the evidence in the record, the ALJ correctly found that the plaintiff did not meet

this burden for the claimed period of disability beginning on April 20, 2001.

In making his finding, the ALJ carefully considered the Plaintiff's medical evidence as contained in the record (Tr. at 11-20). The Plaintiff contends that the ALJ improperly weighed the medical evidence in the record, specifically claiming that the ALJ failed to properly follow the treating physician rule in evaluating the opinions of Dr. Gregory J. Bennett, Dr. S. Rasalingam, and Dr. Mark S. St. Marie. However, it is clear that the ALJ properly weighed the medical evidence in the record in making his decision, and that there is substantial medical evidence in the record to support the ALJ's decision.

The Second Circuit authority grants controlling weight to the opinion of treating physicians. Clark v. Commissioner of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). Indeed, courts in this circuit require that an ALJ provide explanations, or "good reasons," when choosing to discount the opinion of a treating physician. See Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998); see Vales v. Apfel, No. 99-CV-3298 (JG), 2000 WL 863462, at *5, 2000 U.S. Dist. LEXIS 8209, at *18, (E.D.N.Y. June 13, 2000). An ALJ must consider the following factors in determining whether a treating physician's opinion is to be given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support

of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

In his decision, the ALJ recognized Drs. Rasalingham, Bennett and St. Marie as treating sources (Tr. at 16-17).  On different occasions, these treating sources stated that the Plaintiff was disabled (Tr. at 146-47, 228-29).  As an initial matter, the Social Security regulations reserve the ultimate determination of the claimant's disability to rest solely with the Commissioner. 20 C.F.R. § 404.1527(e).  ALJ Reddy did not agree with the physician's assessments and gave good reasons for discounting them, as is required (Tr. at 17).  The ALJ correctly found that the bulk of the  evidence in the record did not support the opinions of these doctors (Tr. at 17).  He also noted that the opinions of Drs. Rasalingham and St. Marie that the Plaintiff was unable to work were given long after the date the plaintiff was last insured (Tr. at 17).

The opinions and notes of Dr. S. Rasalingham, one of the Plaintiff's treating physician provide support for the ALJ's decision.  On April 20, 2001, the Plaintiff was hit by a car while walking (p. 163).  In the months immediately following, Dr. Rasalingham's notes indicate that the plaintiff had a number of

injuries and impairments (headaches, shoulder pain, collapsed lung, backaches, rib pain etc.) that apparently resulted from the accident (Tr. at 161-163).  However, by August 2001, the plaintiff was showing improvement despite pain (Tr. at 160).  During the next few months, the Plaintiff continued to complain of pain in head, shoulders and neck, and Dr. Rasalingam prescribed a course of physical therapy and medication (Tr. at 158-59).  By December of 2001, the neck pain seems to have abated, and by May 2002 the doctor only notes the Plaintiff as having abdominal pain (Tr. at 156).  By August of 2002, the doctor noted that the Plaintiff had "no complaints" (Tr. at 151).

After the insured period, Dr. Rasalingham's notes reveal that in November 2002, the Plaintiff continued to experience some abdominal, back and neck pain for which he continued to prescribe medication (Tr. at 148-150).  Between January 2004 and March 2005, the doctor's notes reveal a deterioration of the plaintiff's symptoms, and notations regarding Plaintiff's mental impairments began to appear (Tr. at 137-47).  It is during this period, in September 2004, that Dr. Rasalingham completed a fatigue questionnaire noting that the Plaintiff was totally disabled due to her cirrhosis, anemia, and neck and back pain since April 20, 2001 (Tr. at 147).

Dr. Rasalingham's notes reveal a period of severe medical difficulty after the Plaintiff's accident in April 2001.  His

notes related to a long period of improvement culminating in an examination that revealed that the plaintiff had "no complaints" in August 2002.   After the Plaintiff's last insured date, the doctor's notes reveal a deterioration in symptoms, and the doctor opined that during this period the Plaintiff had been permanently disabled since April of 2001.   This conclusion that the plaintiff was totally disabled is inconsistent with the doctor's own notes during this period.

Dr. Gregory J. Bennett was the Plaintiff's primary care physician.   In an exam in September 2001, the doctor noted that despite the Plaintiff's subjective complaints of pain and memory problems, her memory appeared intact and her motor strength was "5 out of 5" (Tr. at 235).   During treatment in August 2002, Dr. Bennett opined that the Plaintiff was "totally disabled" and "unable to return to work (Tr. at 228-29)."   However, during this same visit in August 2002, the doctor's notes reveal that, other than the Plaintiff's subjective complaints of pain, the plaintiff was in "no acute distress," had a "small disc herniation...with no cord compression," and had intact motor strength (Tr. at 227-28). These notes support the ALJ's decision because they reveal that the Plaintiff retained a strong level of functionality despite her objective limitations and subjective complaints.

The opinions of Dr. Reza Samie which were based on his evaluation of the Plaintiff also support the ALJ's decision (Tr.

at 277-81).   Dr. Samie noted that the Plaintiff complained of extensive pain and exhibited "continuous moaning and groaning" during examination (Tr. at 277).   Despite these observation, Dr. Samie noted that the Plaintiff was "healthy appearing," "able to walk on toes and heals without major difficulty," had full strength in all muscle groups and upper and lower extremities, had symmetrical reflexes, was alert and oriented, had intact mental function and fluent speech and had no tenderness in the abdomen (Tr. at 277).   The only limitations noted appeared to be a poor affect, a limited range of neck motion and her subjective complaints of pain (Tr. at 277).   He diagnosed her as having chronic pain syndrome, and recommended physical therapy and that no further diagnostic studies were necessary (Tr. at  278).   In explaining her limitations in support of her disability, he noted that she had only a mild partial disability for heavy lifting of more than 20 lb., that she could return to work with light duty restrictions, and stated that this disability "should improve gradually" (Tr. at 278).   Such an examination questions the severity of the plaintiff's subjective symptoms and gives objective medical support for the ALJ's decision.

Dr. Patrick Hughes performed a neurological evaluation of the Plaintiff on December 5, 2002, shortly after the end of the Plaintiff's insured status.   In his report, Dr. Hughes stated that she had received necessary treatment for her physical impairments

resulting from the accident but she did not requires further diagnostic testing, therapy or surgery, and despite the fact that she was not working, she was capable or performing work with a restriction to light duty (Tr. at 307). He further explained that she should be limited in such work to "[n]o standing for more than 15 to 20 minutes, no walking for more than a block, no lifting more than five pounds...no driving more than a few blocks," and that "[s]he would have no problem sitting" (Tr. at 307)." The Physical Residual Functional Capacity Assessment performed by the DDS physician fully corroborates the level of exertional functionality described by both Dr. Samie and Dr. Hughes (Tr. at 365-70).

The ALJ also considered the opinions of Dr. Mark S. St. Marie (Tr. at 16-17). In doing so, the ALJ properly accorded little weight to Dr. St. Marie's assessments because they were not supported by the objective evidence in the record and because they occurred in 2004-2005, long after the Plaintiff's last date insured in September 2002 (Tr. at 200-203, 412-440).

The Plaintiff argues that the retrospective opinions or Dr. Hughes and Dr. Rasalingham, offered after the Plaintiff's date last insured, should be given controlling weight because they accurately reflect and correspond to the severity of the Plaintiff's symptoms during the period for which she was insured. However, the medical evidence is clear that the Plaintiff's

symptomology worsened considerably after the date last insured. The plaintiff's symptoms were not consistent with disability during the period for which she was insured. Evidence of increased impairment or an exacerbation in symptoms after the date last insured is not relevant to the disability claimed prior to the date last insured.

While the Plaintiff's treating sources opined that the plaintiff was disabled, their opinions in this regard are not consistent with other medical evidence in the record and in particular with their own treatment notes. The weight of the objective medical evidence produced by the Plaintiff's treating and examining sources clearly supports the ALJ's decision that the Plaintiff was not disabled. The medical evidence in the record provides substantial support for the ALJ's decision that the Plaintiff was not disabled prior to her date last insured.

The plaintiff's testimony regarding her own activities of daily living also support the ALJ's decision. The Plaintiff drives, goes shopping, goes to appointments, does laundry, does the dishes, sweeps the floor and cares for personal grooming and hygiene needs (Tr. at 15, 37-39). In describing her own limitations and abilities, the Plaintiff said that she can only lift 5-10 pounds (based on her doctor's restriction), walk 1-2 blocks before needing to rest, stand for 15 minutes, climb stairs and sometimes bend at the waist without pain (Tr. at 15, 36-37).

Such activity denotes a relatively strong level of functionality despite severe limitations.  The Plaintiff's own admission of such activity is inconsistent with a finding of disability, and supports the ALJ's decision.

This evidence, considered with the remainder of the record, supports the ALJ's decision.  While it is clear that the Plaintiff's liver disease and neck and back impairments were indeed severe, they were not of sufficient severity so as to preclude her from participating in any substantial gainful activity during the applicable period.  The ALJ correctly concluded that the Plaintiff was unable to return to her past relevant work as a hand packer, a job which is classified as medium exertional work level.  In light of the claimant's inability to perform her past relevant work, the ALJ was required to assess the Plaintiff's residual functional capacity and determine whether there existed jobs for which that capacity would make her eligible.  The ALJ correctly found that the Plaintiff retained the residual functional for a full range of sedentary exertional work prior to her date last insured.

The ALJ's assessment that the Plaintiff remained functionally capable of performing a full range of sedentary work prior to her date last insured is supported by substantial evidence in the record.

A.    <u>The ALJ properly found that the Plaintiff's depression impairment, headaches and memory problems were not severe within the meaning of The Act.</u>

The Plaintiff claims that the ALJ improperly found that the Plaintiff's headaches, depression and memory problems were not severe impairments within the meaning of The Act. Under step two of the disability determination process, the ALJ must determine whether the Plaintiff's impairments are severe. There is substantial evidence in the record to support the ALJ's decision that these impairments were not severe impairment within the meaning of The Act.

In order to establish whether a Plaintiff's impairments are severe, the Plaintiff must show that the impairment imposes significant restrictions in the ability to perform basic work activities. 20 C.F.R. § 404.1520. The Plaintiff did not meet this burden to establish that her depression, headache and memory problem impairments were severe within the meaning of The Act.

There are a number of references in the record to the Plaintiff experiencing headaches in the months following her accident (Tr. at 157-164, 227, 233, 277, 304). However, as the ALJ properly concluded, the medical records reveal that the plaintiff stopped complaining of headaches on a regular basis by early 2002 (Tr. at 137-156). While other medical records reveal that she did experience headaches at times after this point, it is clear from her treating physician's notes that the plaintiff's

headaches decreased after this point, despite the persistence of problems related to her liver disease and back and neck pain.

The Plaintiff's memory problems and depression impairments are only briefly mentioned in the record.  The Plaintiff subjectively claimed at the hearing that she had trouble remembering things immediately after the accident (Tr. at 41-43). However, the treatment notes of treating physician, Dr. Bennett, reveal that in September of 2001, the Plaintiff performed perfectly on a memory exam (Tr. at 235).  Also, apart from the Plaintiff's subjective complaints, the notes of her treating physician, Dr. Rasalingam, only list "poor memory" as a complaint made by the Plaintiff in April of 2004, long after the Plaintiff's date last insured (Tr. at 143).

In terms of the Plaintiff's claims regarding her depression impairment, the Plaintiff also fails to provide supporting medical evidence.  References regarding depression in the medical notes of Dr. Rasalingam were made in 2004, long after the date last insured in September 2002 (Tr. at 142-43).

It is also noted that in those evaluations made by Plaintiff's treating physicians claiming that she was disabled, they did not attribute these claims to the Plaintiff's headaches, depression or memory problems only to her back, neck and liver disease impairments (Tr. at 146, 227-29).  Also it is noted that the plaintiff failed to list any of these "impairments" on her

application for disability (Tr. at 87).  Therefore, the ALJ's conclusion that the plaintiff's headache, depression and memory problem impairments were not severe within the meaning of The Act is supported by substantial evidence in the record.

B.  <u>The ALJ's exclusive reliance on the Medical Vocational Rules in determining whether there were jobs in the national economy that the Plaintiff could perform was proper.</u>

The Plaintiff claims that the ALJ improperly based his decision under step five of the disability determination process exclusively on the Medical Vocational Rules.  However, the ALJ properly evaluated the evidence in the record, and properly applied the Medical Vocational Rules in accordance with the dictates of The Act.

SSR 83-11 provides that if a plaintiff meets all (or substantially all) the exertional demands of a particular exertional level, and exhibits no non-exertional limitations, then the ALJ may base his unfavorable disability decision exclusively on the vocational profile of the plaintiff under the Medical-Vocational Rules.  The ALJ properly found that the plaintiff was capable of performing the full exertional range of sedentary work (Tr. at 19).  The ALJ also properly determined that the Plaintiff had no nonexertional limitations recognized by The Act (Tr. at 19).  Accordingly, the ALJ properly determined that the Plaintiff's specific vocational profile and exertional limitations met the requirements of Medical-Vocational Rule 201.21, thus

directing a finding that the Plaintiff was not disabled (Tr. at 19).

C.   <u>The ALJ properly developed the medical record in this case.</u>

The Plaintiff claims that the ALJ had a duty to re-contact treating doctors St. Marie and Bennett *sua sponte* when it became clear that their medical records did not correspond to the weight of the evidence in the record.

In the interest of fully developing the record, an ALJ has the duty to re-contact a treating physician when medical evidence regarding the plaintiff's disability from that physician is inadequate, ambiguous, or if it conflicts with other evidence in the record. 20 C.F.R. § 404.1512.  Dr. St. Marie completed a brief fatigue questionnaire in August 2005, long after the Plaintiff's date last insured (Tr. at 438).  The ALJ gives little weight to the report because it is well outside the contested period. This analysis was proper because the ALJ found substantial evidence in the record to support his finding of non-disability for the period for which the Plaintiff was actually insured.  Dr. St. Marie's questionnaire may have been accurate in terms of the Plaintiff's condition in 2005, but it provides no evidence that would support or require a finding of disability nearly three years earlier.

There was substantial evidence in the record to support the ALJ's finding that the Plaintiff was not disabled during the period for which the Plaintiff was insured.  Neither the opinions

of Dr. Bennett, nor the brief questionnaire filled out by Dr. St. Marie create any conflict, ambiguity or inadequacy in this analysis.

### D. The ALJ properly discounted the Plaintiff's subjective complaints.

Plaintiff argues that the ALJ improperly discredited the plaintiff's credibility. The statements of an individual claiming disability must be carefully considered to the extent that they are consistent with the objective medical evidence in the record. Social Security Ruling 96-7p. However, the ALJ is not obligated to accept the plaintiff's subjective testimony regarding her impairments to the extent the testimony is inconsistent with the medical evidence in the record. Kendall v. Apfel, 15 F. Supp. 2d 262, 267 (E.D.N.Y. 1998). The ALJ properly found that the objective medical evidence in the record did not support the level of difficulty and disability claimed by the Plaintiff (Tr. at 16).

In his decision, the ALJ stated "the medical record does not support that the claimant's impairments are as severe as she contends" and that "the claimant's statements concerning her impairments and their impact on her ability to work are also considerably more limited...than is established by the medical evidence" (Tr. at 16-18). It is clear from the evidence in the record that this finding is accurate and supported by substantial evidence.

Moreover, the Plaintiff's own testimony regarding her lifestyle along with Plaintiff's medical records support the ALJ's conclusion that the Plaintiff's subjective claims of disability were not fully credible.  The record reveals that plaintiff retains a strong level of functionality that would allow her to perform the full range of sedentary work.  The ALJ properly evaluated Plaintiff's testimony in light of the evidence in the record, and his decision discrediting Plaintiff's subjective testimony was supported by substantial evidence in the record.

The court does not dispute the severity of the Plaintiff's back, neck and liver disease impairments, but the Plaintiff has not met her burden of proving that these impairments prevented her from engaging in *any* substantial gainful activity during the period in dispute.  The medical evidence reveals that the Plaintiff is functionally capable of performing the full range of sedentary exertional work, and accordingly she is not disabled within the meaning of The Act.

The ALJ properly concluded, based on the evidentiary record in its entirety, that the claimant retained a residual functional capacity sufficient to perform the functional demands of the full exertional range of sedentary work during the claimed period between April 20, 2001 and September 30, 2002, and therefore was not disabled within the meaning of the Act.

CONCLUSION

For the reasons set forth above, I conclude that the ALJ's decision was supported by substantial evidence in the record and, therefore, grant the Commissioner's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.


                              S/Michael A. Telesca
                    _____
                         MICHAEL A. TELESCA
                    United States District Judge

Dated:     Rochester, New York
           January 28, 2008